DECISION
 IN MANDAMUS ON OBJECTIONS TO THE MAGISTRATE'S DECISION. {¶ 1} Relator, Consolidated Biscuit Company, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total *Page 2 
disability ("PTD") compensation to William D. McMonigal ("claimant") and ordering the commission to find that claimant is not entitled to PTD compensation.
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ. R. 53 and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate recommended that this court deny relator's request for a writ of mandamus. Relator and the commission have filed objections to the magistrate's decision. The objections filed by relator and the commission do not challenge the magistrate's findings of fact, but they challenge the magistrate's conclusions of law. Because relator and the commission have filed objections to the magistrate's decision, the matter is now before this court for a full, independent review.
 {¶ 3} Relator has filed three objections to the magistrate's decision:
 OBJECTION NO. 1:
 The Magistrate Erred By Failing To Conclude That Respondent Industrial Commission Abused Its Discretion In Concluding That Relator McMonigal's Departure From The Workforce Was Not Voluntarily [sic].
 OBJECTION NO. 2:
 The Magistrate Erred In Relying Upon State ex rel. Liposchak v. Industrial Commission (1995), 73 Ohio St.3d 194 As Support For Her Decision.
 OBJECTION NO. 3:
 The Magistrate Erred In Finding That An Effective Date of August 5, 2003 For The Granting Of Permanent Total Disability Benefits Was Appropriate Even Though Respondent McMonigal Expressed A Willingness To Pursue Rehabilitation. *Page 3 
 {¶ 4} For ease of discussion, we will first address relator's second objection to the magistrate's decision. By its second objection, relator argues that the magistrate's reliance upon the Supreme Court of Ohio's decision in State ex rel. Liposchak v. Indus. Comm., 73 Ohio St.3d 194,1995-Ohio-138, was erroneous. The Supreme Court's decision inLiposchak created an "exception to the rule that a prior voluntary retirement bars permanent total disability compensation." State ex rel.Grimes Aerospace Co., Inc. v. Indus. Comm., 112 Ohio St.3d 85,2006-Ohio-6504, at ¶ 1, citing Liposchak. In Liposchak, the Supreme Court determined that a claimant's departure from the workforce, whether voluntary or not, does not preclude an award of PTD compensation when the claimant suffers from a condition with a long latency period that arises after the departure and the claimant did not have an allowed workers' compensation claim for the long-latent condition at the time the claimant departed from employment. See id. According to relator,Liposchak is inapplicable under the facts of this case. Clearly, the facts of this case are distinguishable from Liposchak, as claimant does not have a long-latent occupational disease. However, in finding that claimant is entitled to an award of PTD compensation, the magistrate considered the unusual circumstances of this case and found the reasoning in the Liposchak case to be applicable here. Upon review, we find that the magistrate properly determined that the Liposchak decision guides the resolution of the dispute in this case. Therefore, for the reasons set forth in the magistrate's decision, we find relator's second objection to be without merit.
 {¶ 5} In its first objection, relator argues that the magistrate erred by not determining that the commission abused its discretion in concluding that claimant's departure from the workforce was not voluntary. Relator's arguments under this objection *Page 4 
center around the issue of whether claimant's departure constituted a voluntary abandonment of employment considering he indicated that he left his employment because of safety concerns. Pursuant to relator's argument, the departure constituted a voluntary abandonment of employment, and, therefore, precluded PTD compensation. To the contrary, the commission determined that claimant's departure from the workforce was not voluntary because his safety concerns were directly related to his industrial injury. However, consistent with the magistrate's decision, we find that the resolution of this mandamus action does not necessitate an analysis of whether claimant's departure from the workforce was voluntary. In other words, that issue is not the determinative issue in this case. Accordingly, relator's first objection to the magistrate's decision is overruled as moot.
 {¶ 6} By its third objection to the magistrate's decision, relator argues that the magistrate erred in finding that PTD compensation beginning August 5, 2003, was appropriate even though claimant expressed a willingness to pursue rehabilitation. This argument concerning claimant's willingness to pursue rehabilitation was presented before the magistrate, and the magistrate adequately addressed the merits of the argument. For the reasons set forth in the magistrate's decision, this argument is unpersuasive.
 {¶ 7} Although the commission maintains that the magistrate properly found that its award of PTD was not an abuse of discretion, it objects to what it characterizes as the magistrate's conclusion that claimant was entitled to PTD compensation because he suffered from the seizure disorder prior to his resignation. The commission argues that the magistrate concluded that whether or not prior termination of employment precludes PTD compensation is determined by whether the claimant suffered from the condition *Page 5 
before or after his resignation. The commission further argues that a claimant's entitlement to PTD compensation depends on whether the claimant is capable of sustained remunerative employment due to the allowed conditions and whether the claimant voluntarily left the entire job market.
 {¶ 8} The commission oversimplifies the magistrate's analysis and conclusion regarding why claimant is entitled to an award of PTD compensation. Certainly, a finding that claimant was suffering from seizures prior to the termination of his employment does not end the analysis regarding whether the claimant is entitled to PTD compensation. However, in reaching her conclusion that claimant is entitled to PTD compensation even if this court concluded that claimant's departure from the workforce was not directly related to his work-related injury, the magistrate did not simply consider the fact that claimant was suffering seizures prior to the date he left his employment with relator. In addition to considering that fact, she found it significant that it took significant time for claimant's doctors to diagnose him and additional time for the commission to allow his claim for the seizure disorder and that the commission ultimately concluded that claimant was permanently and totally disabled due solely to the seizure disorder. Therefore, the commission's objections are not persuasive.
 {¶ 9} Because we find them to be unpersuasive, we overrule relator's second and third objections as well as the commission's objections. Additionally, because the issue of whether the commission was incorrect in concluding that claimant's departure from the workforce was directly related to his work-related injury is not determinative, relator's first objection is overruled as moot. Therefore, following our independent review of this matter, we adopt the magistrate's decision as our own, including the findings of fact and *Page 6 
conclusions of law contained therein, except for the discussion in the magistrate's decision regarding whether the commission properly determined that claimant's departure from the workforce was not voluntary. In accordance with the magistrate's decision, we deny relator's request for a writ of mandamus.
Objections overruled; writ denied. BROWN and FRENCH, JJ., concur. *Page 7 
 APPENDIX A MAGISTRATE'S DECISION Rendered on August 24, 2006 Jim Petro, Attorney General, and Sandra Pinkerton, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 10} Relator, Consolidated Biscuit Company, has filed this original action requesting that this court issue a writ of mandamus, ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which granted permanent total *Page 8 
disability ("PTD") compensation to William D. McMonigal ("claimant") and ordering the commission to find that claimant is not entitled to PTD compensation.
Findings of Fact: {¶ 11} 1. Claimant began working for relator in March 2000.
 {¶ 12} 2. On June 10, 2000, claimant sustained a work-related injury while helping another employee perform repairs on a piece of machinery. Claimant sustained an electrical shock injury, and his claim was originally allowed for "1st DEGREE BURN, RIGHT HAND, NOT OTHERWISE SPECIFIED; OPEN WOUND OF RIGHT HAND."
 {¶ 13} 3. Claimant was off from work for a couple of months.
 {¶ 14} 4. Claimant did return to work with relator two to three times, but his injured hand became infected and he was off work again.
 {¶ 15} 5. Some time after claimant's injury and after claimant returned to work with relator, claimant began experiencing episodes which were eventually diagnosed as seizures. Claimant sought medical treatment immediately; however, the doctors who examined him initially did not diagnose the seizure disorder. Ultimately, by order dated July 2, 2002, the commission would recognize claimant's claim for "RECURRENT PARTIAL AND GENERALIZED SEIZURE DISORDER."
 {¶ 16} 6. On September 27, 2000, claimant submitted a letter to his supervisor, Roger Young, expressing concerns over what claimant perceived to be serious safety issues at the workplace. Claimant identified 11 instances which he perceived demonstrated serious safety concerns. Claimant noted that there was no safety program for relator's employees to attend and noted several instances where he and other employees were asked to and did perform service/repair type work on machines while *Page 9 
those machines were still operating. Claimant also indicated that, in his opinion, employees who lacked electrical experience should not be performing electrical repairs. Claimant indicated that he continually made his concerns known to his supervisors but that he was told that they have been doing things that way for a long time and no changes were made. (Claimant's letter can be found at pages 131-135 of the record.)
 {¶ 17} 7. Claimant ultimately submitted the following statement to relator at the time that he left his employment with relator:
 This is undoughtedly [sic] the most unsafe place to work I have ever witnessed[.] They have no safety procedures no safety guidlines [sic] being enforced at the factory whatsoever and they are not about to change this. I have asked and asked them to, and they will not. These are my reasons for separation. I cannot force myself to work in this unsafe environment. I nearly died once allready [sic] and will carry the scares of working there for the rest of my life.
 {¶ 18} 8. According to a document signed by claimant's supervisor and dated December 8, 2000, claimant's departure from his job was officially considered to be for the following reason: "Work environment — unsafe."
 {¶ 19} 9. As stated previously, claimant's seizure disorder was not quickly diagnosed and was not additionally allowed to his claim until July 2, 2002.
 {¶ 20} 10. Claimant's deposition was taken on August 27, 2004, and is included at tab 11 of the stipulated evidence. At that time, claimant stated that he never had any seizures before his industrial injury (page 95) and that he was having both grand mal seizures and petit mal seizures every week (page 93). Claimant also stated that he fell while having one of his seizures and tore ligaments in his left knee (page 94). Claimant *Page 10 
stated that he began having these seizures before he left his employment with relator (page 91).
 {¶ 21} 11. By commission order dated October 23, 2003, a staff hearing officer ("SHO") determined that claimant's seizure disorder had reached maximum medical improvement ("MMI") and terminated his temporary total disability ("TTD") compensation.
 {¶ 22} 12. On December 20, 2004, claimant filed an application for PTD compensation. Claimant indicated that he was 32 years old, had graduated from high school, could write without difficulty, and that he could read and perform basic math, but not well. Claimant also indicated that he began receiving social security benefits in March 2004. Claimant has not returned to work since he left his employment with relator.
 {¶ 23} 13. Claimant submitted the February 6, 2004 letter from one of his treating physicians, Joseph P. Kraska, M.D., who opined as follows:
 * * * After discussion with William I feel that he has reached maximum medical improvement for his allowed conditions and feel the best that we can hope is for stabilization of his conditions with medical treatments and therapy. I believe that it's extremely difficult for William to hold any meaningful task because of his conditions, and his current situation causes the patient increased stress.
Dr. Kraska also completed a residual physical capacities questionnaire dated July 2, 2004. Based upon his allowed seizure disorder, Dr. Kraska noted that claimant could not return to his former position of employment and that he was permanently and totally disabled from sustained remunerative employment due to the allowed conditions in the claim.
 {¶ 24} 14. Claimant also submitted progress reports from another treating physician, Proasad Policheria, M.D. Those reports cover the period from July 12, 2001 *Page 11 
through November 25, 2003, and track Dr. Policheria's efforts to bring claimant's seizure disorder under control by referring him to other doctors and changing his medications. Dr. Policheria also opined that claimant was permanently and totally disabled due to the seizure disorder.
 {¶ 25} 15. The record also includes the February 16, 2005 independent medical examination performed by Mark G. Loomus, M.D. Ultimately, Dr. Loomus opined that he was not convinced that claimant's seizures were related to his industrial injury. However, accepting that the seizure disorder was an allowed condition, Dr. Loomus stated, as follows:
 * * * [S]ince this gentleman is still having seizures and is likely to continue having seizures (there has been no change in the pattern over the last three and a half years as treated by his neurologist), I feel that he is disabled from them.
Dr. Loomus did note that, in spite of the fact that claimant's seizures were disabling, he believed that:
 * * * [W]ith more aggressive neurological evaluation and treatments and medication adjustments, this gentleman's spells and seizures should be able to get under good enough control to enable him to get a job as long as that job did not involve operating heavy machinery or putting him or others at risk should he suddenly have a seizure (such as driving a commercial vehicle, for example). Therefore, with more aggressive epileptic care and treatments, he should be able to return to work with those restrictions (no driving or operating heavy machinery or climbing, for example). As long as he is having seizures of any sort, then the restrictions would be considered permanent.
 {¶ 26} 16. The record also contains the April 7, 2005 report of Harry A. Popovich, M.D., who concluded that claimant's allowed conditions had reached MMI, assessed a zero percent whole person impairment for the electrical burn to his right hand and a 40 *Page 12 
percent whole person impairment with regard to his generalized seizure disorder and concluded that claimant would be capable of performing light duty work.
 {¶ 27} 17. A vocational assessment was prepared by Anthony Stead and dated May 18, 2005. Working on the assumption that claimant would be able to perform some kind of restricted work that falls within the sedentary exertion level, Mr. Stead identified certain transferable skills and noted that claimant's age, education, and work experience would permit the claimant to work at various jobs, including the following: "Check Cashier; Rental Clerk; Bench Worker; Small Appliance Repair; Repair Order Clerk; Lock Assembler; and Quality Control."
 {¶ 28} 18. Robert A. MacGuffie, Ph.D. prepared a vocational evaluation dated June 28, 2005. Dr. MacGuffie indicated that he had read Mr. Stead's vocational assessment and noted, as follows:
 Anthony Stead, an [sic] vocational evaluator, remarked that Mr. McMonigal should be able to perform gainful employment with utilization of appropriate job seeking techniques and/or rehabilitation services designed to assist him.
 It seems that Mr. Stead and Dr. Loomus's opinion that Mr. McMonigal can work is based on contingencies, i.e. aggressive neurological treatments and rehabilitation services.
Dr. MacGuffie concluded that, following his review of the medical information, claimant's seizures are not under control and that he would present a hazard to himself and other employees in any work situation. As such, Dr. MacGuffie ultimately concluded that claimant was incapable of performing sustained remunerative employment. *Page 13 
 {¶ 29} 19. Claimant's application for PTD compensation was heard before an SHO on September 12, 2005, and was granted. At the hearing, relator presented several arguments, which were all rejected by the hearing officer. First, relator had argued that claimant voluntarily abandoned his employment with relator for reasons unrelated to his allowed conditions. The SHO rejected this argument, as follows:
 * * * As to the Employer's first objection, they argued that the Injured Worker voluntarily abandoned his employment for reasons unrelated to the claim, and therefore is not entitled to Permanent and Total Disability benefits. This Staff Hearing Officer finds that not to be the case. The Staff Hearing Office reviewed the testimony of the Injured Worker at hearing from the transcript and interprets the testimony to indicate that although the Injured Worker indicates that he quit his employment as a result of his concern that the working conditions were unsafe, those concerns stemmed directly form the injury, and therefore, are directly and proximately related to the injury that occurred herein. Therefore, the Injured Worker's departure from the workforce is not unrelated to the injury that occurred or the allowed conditions in this claim. Further, the Employer argues in support of their contention, the finding of the Ohio Bureau of Employment Services denying unemployment benefits. The Injured Worker also testified at hearing that the benefits had originally been granted, and the Employer appealed. The appeal hearing went forward while the Injured Worker was still in the hospital, related to the allowed conditions in this claim. Therefore, the Injured Worker did not have opportunity to appear for the hearing or present his side of the issue. Further, the order of a separate agency is not precedential for this agency. However, this Staff Hearing Officer finds it is not persuasive either, on the basis of the Injured Worker's inability to be present for the hearing and to present his side.
In rejecting relator's argument, the SHO also made the following finding:
 This Staff Hearing Officer also finds that the Injured Worker has been medically unable to return to any type of employment since that time. Therefore, this Staff Hearing Officer finds that although the Injured Worker has not returned to any type of employment since this injury, it is not *Page 14 
because of lack of interest or his voluntary abandonment of the workforce, but his medical conditions as a result of this particular injury.
Second, relator had argued that claimant's own supporting medical evidence does not justify the granting of his application for PTD compensation. The SHO rejected this argument, as follows:
 * * * The Employer's [sic] argues that Dr. Kraska only indicates that the Injured Worker is not able to return to his former position of employment and that he would have difficulty holding to any meaningful task because of his conditions and his current situation causes increased stress. The Employer argues that stress is not an allowed condition in this claim.
 This Staff Hearing Officer finds that while stress is not an allowed condition in the claim and the initial report dated 2/6/2004, from Dr. Kraska, does only indicate that the Injured Worker is unable to return to his former position of employment, Dr. Kraska's completion of a form sent to him by Injured Worker's counsel and dated 7/2/2004, does specifically indicate that the Injured Worker is Permanently and Totally Disabled from performing sustained remunerative employment due to the allowed conditions in the claim. It goes on to indicate that based upon the physicians treatment of the Injured Worker, it is his opinion that Permanent and Total Disability began on 8/6/2003. * * *
Third, relator had argued that claimant has multiple non-allowed conditions which he asserts should be included in his claim. The SHO found that this argument was moot for the following reasons:
 * * * This Staff Hearing Officer is considering only the allowed conditions in this claim and is not giving any other medical condition any weight, either to support Permanent and Total Disability or to deny it. * * *
Fourth, relator argued that the preponderance of the evidence clearly establishes that claimant is not permanently and totally disabled. The SHO indicated that she specifically *Page 15 
disagreed with relator's assessment. Fifth, relator had argued that, because PTD compensation is compensation of last resort, the fact that claimant indicated he is willing to try rehabilitation should preclude an award of PTD compensation at this time. The SHO denied this argument for the following reasons:
 * * * The fact that the Injured Worker expressed an [sic] willingness to try Rehabilitation or would like to get back to work, does not circumvent the finding that the Injured Worker is medically unable to perform Rehabilitation or Vocational Training to facilitate his return to the workforce. The Injured Worker specifically testified at hearing that he was told by his physician that he cannot participate in Rehabilitation because he would be a danger to himself and/or others if he would have seizure during the course of a hazardous work activity.
Based solely upon the allowed conditions in the claim, the SHO concluded that claimant was permanently and totally disabled and that consideration of the nonmedical disability factors was not required. The SHO indicated that the order was based upon the treatment notes and reports of Dr. Kraska dated July 29, 2003 and February 6, 2004, and Dr. Kraska's questionnaire dated July 2, 2004. The SHO also determined that the start date for PTD compensation was August 5, 2003 based upon the fact that claimant was found to be MMI based upon Dr. Kraska's July 29, 2003 report.
 {¶ 30} 20. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 31} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of *Page 16 
mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986),26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 32} The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments but, also, the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 33} In this mandamus action, relator raises the same five arguments which were raised at the hearing before the SHO. Specifically, relator contends, as follows: (1) claimant voluntarily abandoned his employment with relator for reasons unrelated to the allowed conditions; (2) claimant's own medical evidence does not justify an award of PTD compensation; (3) claimant has multiple non-allowed conditions which he believes *Page 17 
should be included in his claim; (4) the preponderance of the evidence makes it clear that claimant is not permanently and totally disabled; and (5) because claimant has expressed a willingness to try some form of rehabilitation, PTD compensation should be denied. For the following reasons, the magistrate finds that relator's arguments lack merit and that relator is not entitled to a writ of mandamus.
 {¶ 34} It is undisputed that the termination of an employee from their employment and/or the termination of employment by the employee, whether through retirement or otherwise, can have an effect on the employee's furture eligibility for various types of compensation. Where TTD compensation is at issue, the voluntary abandonment rule rests on the presumption that eligibility for TTD compensation depends upon the claimant's continued employment at the job where the injury occurred. It has been noted that, where a claimant has voluntarily retired and has no intention of returning to his former position of employment, the claimant is not prevented from returning to the former position of employment by the industrial injury but by his own actions. SeeState ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630;State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145; and State ex rel. Ashcraft v. Indus. Comm. (1987),34 Ohio St.3d 42.
 {¶ 35} In State ex rel. Rockwell Internatl. v. Indus. Comm. (1988),40 Ohio St.3d 44, the court clarified that only a voluntary abandonment would bar the payment of TTD compensation and that, when the claimant's retirement is causally related to the industrial injury, the retirement is not "voluntary," and does not preclude eligibility for TTD compensation. In subsequent cases, the court's attention then focused on whether various methods of job termination, such as retirement, layoff, firing, incarceration, or *Page 18 
resignation, might properly be characterized as "voluntary" so as to bar a subsequent award of TTD compensation. (Citations omitted.)
 {¶ 36} During this time period, the court considered the effect of a claimant's departure from their job on various other forms of compensation as well. The court determined that a claimant's voluntary departure from the former position of employment would not automatically preclude eligibility for a future award of permanent partial disability (former R.C. 4123.57[A]), permanent total disability (R.C. 4123.58), or disability compensation (R.C. 4123.56[B]) because, unlike TTD compensation, the claimant's eligibility for those forms of disability compensation was not tied to the continued prospect of employment at the job where the injury occurred. (Citations omitted.)
 {¶ 37} Originally, the court attempted to utilize the rationale from the line of cases involving a claimant's eligibility for TTD compensation following a termination/departure from the workforce to permanent total disability cases. However, this approach was inadequate because, as the court stated in State ex rel. Baker Material HandlingCorp. v. Indus. Comm. (1994), 69 Ohio St.3d 202, "PTD compensation has an entirely different purpose than TTD compensation. PTD compensation presupposes that there is no prospect that the claimant will ever return to his former position or any other employment." The court noted that a claimant who is permanently and totally disabled is forever unfit for sustained remunerative employment and that it would be useless to force such a claimant to seek employment which he could not reasonably be expected to perform. The court also addressed the issue of retirement and stated, as follows:
 We hold that the effect of retirement upon an employee's eligibility for PTD compensation depends on whether the retirement is taken prior or subsequent to when the *Page 19 
employee becomes permanently and totally disabled. Where an employee retires prior to becoming permanently and totally disabled, such employee is precluded from eligibility for PTD compensation only when the retirement is voluntary and constitutes an abandonment of the entire job market. Where an employee retires subsequent to becoming permanently and totally disabled, such employee is not precluded from eligibility for PTD compensation regardless of the nature or extent of the retirement.
Id. at 212 (citations omitted).
 {¶ 38} Approximately a year later, in State ex rel. Liposchak v.Indus. Comm. (1995), 73 Ohio St.3d 194, the court found an exception to the holding from Baker Material Handling when a claimant contracts an occupational disease which has a long latency period. In that case, the claimant was caught bringing a handgun to work and quit before he could be fired. Any work activity thereafter was sporadic at best. Twelve years later, claimant was diagnosed with malignant mesothelioma. Claimant's claim was allowed, as it was determined that that condition arose from his employment and claimant filed an application for PTD compensation. The commission denied his request for PTD compensation because he had voluntarily removed himself from the active workforce. However, the Supreme Court of Ohio found that claimant was entitled to compensation. The court distinguished Baker Material Handling because mesothelioma has a long latency period, and claimant did not have an allowed workers' compensation claim for this occupational disease at the time he left his employment. While recognizing that problems can arise when another factor independently contributes to the inability to return to relevant employment, the court reiterated that the existence of a causal relationship between an allowed condition and an inability to work underlies all successful requests for disability compensation. *Page 20 
 {¶ 39} In the present case, it is undisputed that claimant terminated his employment with relator prior to the time his doctor opined that he was permanently and totally disabled. As such, applying Baker MaterialHandling, compensation would be precluded only if it is found that (1) claimant's departure was voluntary, and (2) claimant abandoned the entire job market. In the present case, the commission determined that claimant's departure from the workforce was not "voluntary" because the commission determined that claimant's safety concerns were directly related to his industrial injury. Relator argues that this reasoning would permit all injured workers to leave their employment and still receive TTD compensation as long as they maintained they were leaving because of their injury. However, this magistrate disagrees with that conclusion.
 {¶ 40} In the present case, claimant was injured while attempting to repair a piece of equipment while the machine was still operating. The majority of his stated reasons for leaving his employment involve the fact that he and other employees continue to be placed in similar situations and claimant believes that he or someone else will be injured. His concerns are directly related to the events surrounding his injury. As such, the commission found that his departure was not voluntary.
 {¶ 41} Even if this court were to find that this claimant's departure from his job constituted a voluntary abandonment of his employment, the magistrate finds that compensation would still have been payable to him based upon the commission's second stated reason for granting him an award of compensation. Specifically, the SHO noted that, as a result of the seizure disorder, which had not yet been diagnosed, claimant had actually been disabled since September 2000. As noted in the findings of fact, the medical evidence indicated that claimant began having seizures prior to the date that he *Page 21 
terminated his employment. However, claimant's doctors were not able to diagnose his seizure disorder until after he terminated his employment. Because the commission determined that claimant was permanently and totally disabled solely due to his allowed seizure disorder, and those seizures were happening before he terminated his employment, the commission determined that claimant was essentially disabled prior to the date he terminated his employment. Pursuant to State ex rel. Brownv. Indus. Comm. (1993), 68 Ohio St.3d 45, a claimant can abandon a former position of employment only if he has the physical capacity for employment at the time of the abandonment.
 {¶ 42} In further consideration of this issue, the magistrate notes that this is a most unusual case. In this case, the claimant began experiencing seizures before he terminated his employment with relator. Ultimately, the commission determined that claimant was permanently and totally disabled due solely to the allowed condition of seizure disorder. This case presents the following question: What is the effect of an employee's retirement prior to when the employee files an application for PTD compensation where the employee is, at the very time he leaves his employment, suffering from a condition which is ultimately found to render him permanently and totally disabled? In one respect, this magistrate believes that the rationale from Liposchack provides some guidance in answering this question. In Liposchack, the claimant had been exposed to substances which ultimately caused him to be diagnosed with malignant mesothelioma. The claimant, when faced with a disciplinary action, left his employment and only worked sporadically thereafter. Twelve years later, he was diagnosed with mesothelioma and ultimately the Supreme Court of Ohio determined that, under those *Page 22 
circumstances, because the claimant already had mesothelioma at the time he left his employment, he should remain eligible for an award of PTD compensation.
 {¶ 43} In the present case, claimant's testimony and the medical evidence indicates that he was experiencing seizures prior to the time he left his employment; however, his seizure disorder was not actually diagnosed until after he terminated his employment. The commission found that his seizure disorder alone rendered him permanently and totally disabled. In this specific, very limited situation, the magistrate believes that the same rationale should apply and claimant is entitled to an award of PTD compensation.
 {¶ 44} Relator also argues that claimant's medical evidence does not support a finding that he is permanently and totally disabled. Relator points to the February 6, 2004 report of Dr. Kraska, wherein Dr. Kraska stated as follows: "I believe that it's extremely difficult for William to hold any meaningful task because of his conditions, and his current situation causes the patient increased stress."
 {¶ 45} Relator's argument and citation to Dr. Kraska's February 6, 2004 report ignores the other evidence in the record upon which the commission relied. Specifically, the SHO cited to Dr. Kraska's July 2, 2004 physical capacities questionnaire, wherein Dr. Kraska specifically noted that claimant could not return to his former position of employment and that claimant was permanently and totally disabled from sustained remunerative employment due to the allowed conditions in the claim. Dr. Kraska specifically noted the allowed conditions on the form and noted that claimant has uncontrolled seizures. Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as the fact finder. Teece, supra. It is *Page 23 
immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission. State ex rel.Pass v. C.S.T. Extraction Co. (1996), 74 Ohio St.3d 373. Because the commission cited some evidence to support its determination, the magistrate finds that relator's argument is not well-taken.
 {¶ 46} Turning to relator's fourth argument, that the preponderance of the evidence indicates that claimant is not permanently and totally disabled, the magistrate rejects that argument as well. As noted above, it is immaterial whether other evidence in the record, even if greater in quality and/or quantity supports a conclusion which is contrary to the commission. The fact that relator points to evidence in the record from Drs. Loomis and Popovich and the vocational report of Mr. Stead indicating that claimant can perform some sustained remunerative employment is immaterial.
 {¶ 47} Relator also argues that, because claimant believes he has other conditions which should be allowed in his claim, claimant should not be awarded PTD compensation. It is undisputed that the presence of non-allowed conditions can neither advance nor defeat an award of compensation; however, the commission's order specifically indicates that the hearing officer was not considering any of the non-allowed conditions which claimant alleged should be allowed in his claim. Because the commission did not take any of claimant's non-allowed conditions into account in finding that he was entitled to PTD compensation, there is no error here. As such, relator's argument is rejected.
 {¶ 48} Lastly, relator argues that claimant should and is actually willing to pursue rehabilitation and that his failure to pursue rehabilitation should preclude an award of PTD compensation. It is undisputed that PTD compensation is a compensation of last resort *Page 24 
and is further undisputed that the commission may take a claimant's failure to pursue rehabilitation and/or retraining into account in determining whether or not the claimant is entitled to PTD compensation. However, in the present case, after reviewing the evidence in the record, the commission determined that claimant's seizure disorder not only renders him incapable of performing any sustained remunerative employment but that his seizure disorder also precludes him from pursuing any rehabilitation. Further, as the magistrate noted previously, PTD compensation presupposes that there is no prospect that the claimant will ever return to his former position of employment or any other employment and that it would be useless to require such a claimant to pursue re-employment which he is not reasonably expected to perform. Because the commission has found that claimant is precluded from any and all sustained remunerative employment and found the effective date to be August 5, 2003, one year following the commission's allowance of his claim for the condition of seizure disorders, nothing would have been gained from any attempts on the part of claimant to have pursued any rehabilitation. As such, based upon the commission's reasoning, this argument lacks merit as well.
 {¶ 49} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in finding that claimant is entitled to PTD compensation. Furthermore, even if this court was to disagree with the commission's conclusion that claimant's departure from the workforce was directly related to his work-related injury, because the record indicates that claimant was suffering seizures prior to the date that he left his employment and that it took a significant amount of time for his doctors to diagnose him and additional time for the commission to *Page 25 
additionally allow his claim for same, and because the commission ultimately concluded that this particular claimant was permanently and totally disabled due solely to the seizure disorders, the magistrate would find that his departure from the workplace does not bar his eligibility for PTD compensation, and relator's request for a writ of mandamus should be denied.
/s/ Stephanie Bisca Brooks
 STEPHANIE BISCA BROOKS MAGISTRATE *Page 1